WILKINSON, Chief Judge,
concurring in the denial of rehearing en banc.
The closeness of the court’s vote (6 to 5) leads me to explain my own. I concur in the denial of rehearing en banc because the legislative action here seems to me to violate basic First Amendment principles. The Virginia General Assembly has approved over one hundred special plates, and the statute authorizing the SCV special plate is the only one with design and logo restrictions. When a legislative majority singles out a minority viewpoint in such pointed fashion, free speech values cannot help but be implicated. And it is as a free speech case, not as a Confederate flag case, that this appeal must be resolved.
It is important to keep the issue here in some perspective. The vast majority of Virginians have no desire to display a Confederate logo on their license plates. The vast majority of Virginians seek venues other than a motor vehicle tag for the observance of their lineage, and do not view the Confederate flag as symbolically celebrating their line of descent. The vast majority of Virginians understand that one motorist’s proclamation of heritage is another’s reminder of the unspeakable cruelties of human bondage. The vast majority of Virginians recognize the sad paradox of Confederate history — namely, that individual southerners, so many good and decent in themselves, swore allegiance to a cause that thankfully was lost, and to practices that no society should have sought to defend.
But the First Amendment was not written for the vast majority of Virginians. It belongs to a single minority of one. It is easy enough for us as judges to uphold expression with which we personally agree, or speech we know will meet with general approbation. Yet pleasing speech is not the kind that needs protection.
Our Constitution safeguards contrarian speech for several reasons. As the Civil Rights Movement demonstrates, yesterday’s protest can become tomorrow’s law and wisdom. Other contrarian speech should move popular majorities to reaffirm their own beliefs rather than suppress those of others. The reminders of history’s most tragic errors only deepen our commitment to the dignity of all citizens: The Constitution that houses the First Amendment also shelters the Fourteenth, an everlasting reminder that a nation betrothed to liberty and equal justice under law must remain vigilant to realize both.
WILLIAMS, Circuit Judge,
concurring in the denial of rehearing en banc.
There can be no doubt that the symbol desired by the SCV on their special plate is a controversial and divisive one. But as Chief Judge Wilkinson points out, this case must be resolved “as a free speech case, not as a Confederate flag case.” Ante at 242. In essence, the Commonwealth has opened its license plates to myriad private *243 speakers but wishes to restrict the message one of those speakers would express based on its disagreement with the viewpoint contained therein; this the First Amendment does not permit. I undertake herein to respond briefly to several points raised in the separate opinions of my colleagues respecting and dissenting from the denial of rehearing en banc.
My first dissenting colleague suggests that what is at issue here is pure government speech. For the reasons stated in the panel opinion, I disagree. I will respond here only to the suggestion that the Supreme Court’s opinion in Wooley v. Maynard, 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977), compels the conclusion that government speech is at issue. As my first dissenting colleague notes, the Supreme Court in Wooley found the requirement that New Hampshire drivers display license plates bearing - the slogan “Live Free or Die” to be impermissible because it forced the complaining driver “to be an instrument for fostering public adherence to an ideological point of view he finds unacceptable.” Wooley, 430 U.S. at 715, 97 S.Ct. 1428. My colleague thus concludes “that license plates are the State’s speech.” Post at 250. I believe this conclusion misapprehends Wooley’s significance in this case. Wooley rested on the proposition “that the right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all.” Wooley, 430 U.S. at 714, 97 S.Ct. 1428. The complainant’s First Amendment interests were implicated in Wooley because the message in question, displayed on his license plate, would be attributed to him. That the message the state created and required to be displayed on all plates — “Live Free or Die” — was the state’s message is not a necessary component of Wooley’s holding. One might reason, of course, as my first dissenting colleague appears to, that if the driver is compelled to speak, the message must be the state’s, and therefore anything on a license plate, under any circumstances, is government speech. Nowhere in Wooley, however, did the Court suggest this was the case; the only speech interest identified in Wooley was that of the driver. More significantly, the facts in Wooley indicate that even if the Supreme Court concluded that the state was the speaker, that conclusion would not control this case. In stark contrast to the situation in Woo-ley, where the same state slogan was required on nearly all license plates, the various mottos and logos on most special plates in Virginia are created and selected by drivers themselves.
As to the concerns expressed in my second dissenting colleague’s opinion, I believe that they, too, are ultimately unpersuasive. My second dissenting colleague suggests that the speech in question here is not easily placed on either side of the “blurry and sometimes overlapping line between private and government speech,” post at 251, and that the test employed in the panel opinion for determining whether the government is the speaker was applied in a manner that did not adequately address the Commonwealth’s interest in avoiding attribution of the logo’s message to the Commonwealth.
As to the first concern, I believe that Wooley is again instructive. I note that my colleague identifies as unpersuasive the panel opinion’s conclusion “that the private citizen bears the'ultimate responsibility’ for the speech” on Virginia’s special plates, suggesting that this factor “may very well be a key to the case.” Post at 251 n. 2. The Supreme Court in Wooley, however, apparently concluded that the message on New Hampshire’s plate would be attributed to the driver, a conclusion strongly indicated by the success of the complaining *244 driver’s First Amendment claim. If the message or slogan on a license plate is ultimately attributable to the state that issues the plate, as both of my dissenting colleagues suggest, then the First Amendment claim in Wooley ought to have foundered for failure to implicate individual speech rights.
Indeed, the proposition that the state is ultimately responsible for the license plate message in question is weaker here than it was in Wooley. In Wooley, the slogan in question was required on all non-commercial New Hampshire plates, a fact presumably apparent to anyone driving in New Hampshire. 430 U.S. at 705, 97 S.Ct. 1428. Individual drivers thus had no control over the content of their license plates. Here, in contrast, numerous messages, crafted and selected by the drivers themselves, appear on Virginia’s special plates. Plainly, anyone/ viewing .a license plate bearing a motto or logo the viewer knows to have been selected by the driver or owner of the vehicle is more likely to associate the message with that driver or owner than would be the viewer of a state-mandated logo appearing on all noncommercial plates across the state.*
My colleague writing respecting the denial of rehearing en banc suggests that the panel opinion and the various opinions concurring in and dissenting from the denial of rehearing en banc “focus[] on the license plate as a whole in their respective analyses.” Post at 245. I do not believe that either the panel opinion or this opinion suggests that any part of the SCV special plate’s design other than the motto and logo implicates private speech interests. Further, whatever the merits of my colleague’s suggestion that there is a government speech interest in (as distinct from a government interest in regulating) the content of the motto and logo appearing on a special plate, it seems to me that we do not differ substantially in our views that the private speech interests implicated by the motto and logo must prevail in this circumstance over any countervailing interest the government may have.
In sum, I believe that the government-speech issue in this case was correctly decided and that rehearing en banc was appropriately denied. Neither party in this case was sufficiently concerned by the narrowly written panel opinion, centered on the unique factual circumstances of the logo restriction and the special plate program, to seek en banc rehearing, and the number of my colleagues who would have been willing to rehear' this case en banc does not constitute the majority required by Fed. R.App. Proc. 35(a) (stating that a majority of judges in regular active service may order en banc review). Moreover, through their separate opinions, my colleagues have presented their views of the issues.

 My second dissenting colleague concludes, as I understand his opinion, that the government’s interest in avoiding having a message that it finds distasteful attributed to it justifies treating the logo restriction as a time, place, and manner restriction. A time, place, and manner restriction, however, must be "justified without reference to the content of the regulated speech,” a test the logo restriction surely fails. See, e.g., Ward v. Rock Against Racism, 491 U.S. 781, 791, 109 S.Ct 2746, 105 L.Ed.2d 661 (1989). The Commonwealth, as the panel opinion notes, has offered no justification for the restriction in this case unrelated to the content of the logo it prohibits. See Sons of Confederate Veterans v. Commissioner of the Va. Dep't of Motor Vehicles, 288 F.3d 610, 626 & n. 14 (4th Cir.2002).